USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/3/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

ANDRES FUENTES TAPIA et al.,          :

                    Plaintiffs,       :        16 Civ. 6957 (HBP)

    -against-                         :        OPINION
                                               AND ORDER
BENNY'S BURRITOS, INC.,               :
et al.,
                                      :

                    Defendants.       :

-------------------------------------X


            PITMAN, United States Magistrate Judge:


            This matter is before me on the parties' joint applica-

tion to approve their settlement (Docket Item ("D.I.") 37).  All

parties have consented to my exercising plenary jurisdiction

pursuant to 28 U.S.C. § 636(c).

            Plaintiffs allege that they were employed as dishwash-

ers, cooks, porters and delivery workers at several Blockheads

and Benny's Burritos restaurants that were owned and operated by

defendants Benny's Burritos, Inc., Egg White, Inc., 954 Second

Corp. and Kiosk 50 Corp. (collectively "Defendants").  Plaintiffs

further allege that they worked in excess of 20% of their workday

performing non-tipped work and should, therefore, not have been

compensated as "tipped employees."  Plaintiffs bring this action

under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201

et seq., and the New York Labor Law (the "NYLL"), and seek to recover unpaid full minimum wage and overtime premium pay. Plaintiffs also assert claims based on the Defendants' alleged failure to provide certain wage notices and statements as required by the NYLL. Plaintiffs estimate they are owed $73,515.00 in unpaid wages and could potentially collect $182,030 in total damages.[1] Plaintiffs commenced this action as a collective action, but reached a settlement before conditional certification.

Defendants provided thousands of detailed time records and payroll records which reflected the hours plaintiffs worked. There is no dispute between the parties about the number of hours worked by each plaintiff. Rather, Defendants contend that plaintiffs were compensated at the proper hourly rate because they were in fact "tipped employees." According to Defendants' damages calculations, plaintiffs would only be able to recover a

---

[1] This figure includes unpaid minimum wage and overtime premium compensation, liquidated damages and statutory wage notification violations. It is does not include $39,726.42 in pre-judgment interest. See Plaintiffs' Damages Calculations Chart (provided to the undersigned and defense counsel during the May 10, 2017 settlement conference) ("Damages Chart") at 2. Plaintiffs' counsel notes in his letter that potential overall damages were $405,735.77, but does not explain the basis for this number (Letter of Shawn R. Clark, Esq., to the undersigned, dated Jan. 26, 2018 (D.I. 37) ("Clark Letter") at 2). Because the numbers listed in Damages Chart were used to negotiate the settlement, I base my analysis on those calculations.

maximum of $86,255.19 at trial if plaintiffs were to prevail on every claim they assert.

I held a lengthy settlement conference on May 10, 2017 that was attended by the parties and their counsel. After a protracted discussion of the strengths and weaknesses of the parties' respective positions, the parties agreed to resolve the dispute for a total settlement of $110,000 (Clark Letter at 2). This $110,000 is to be paid over a period of three installments (Settlement Agreement and General Release, annexed to Clark Letter (D.I. 37-1) ("Agreement") ¶ 7A). The Agreement also provides that plaintiffs' counsel will receive $36,666.67 -- one third of the overall settlement -- for attorneys' fees and costs (Agreement, Ex. A). The amount claimed by each plaintiff[2] and the net amount that will be received by each plaintiff after deduction of legal fees and costs are as follows:

| Plaintiff | Length of Employment | Amount Claimed | Net Settlement Amount |
|---|---|---|---|
| Cesar Granados | 89 weeks | $30,544.85 | $7,772.58 |

---

[2] The amount claimed by each plaintiff includes the allegedly unpaid minimum wage and overtime premium compensation, liquidated damages and statutory damages for alleged violations of the NYLL, but does not include any claims for pre-judgment interest.

| | | | |
|---|---|---|---|
| Jaime Guadarrama De Jesus | 172 weeks | $27,416.10 | $7,907.31 |
| Ruben Perez | 139 weeks | $25,781.66 | $13,898.42 |
| Javier Flores Segundo | 256 weeks | $52,608.56 | $28,825.96 |
| Jose Sontay | 204 weeks | $33,032.36 | $11,611.22 |
| Andres Fuentes Tapia | 50 weeks | $12,646.50 | $3,317.84 |

> Court approval of an FLSA settlement is appropriate
>
> "when [the settlement] [is] reached as a result of
> contested litigation to resolve bona fide disputes."
> Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376,
> at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed
> settlement reflects a reasonable compromise over con-
> tested issues, the court should approve the settle-
> ment." Id. (citing Lynn's Food Stores, Inc. v. United
> States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1

(S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original).

"Generally, there is a strong presumption in favor of finding a

settlement fair, [because] the Court is generally not in as good

a position as the parties to determine the reasonableness of an

FLSA settlement." Lliquichuzhca v. Cinema 60, LLC, 948 F. Supp.

2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quota-

tion marks omitted). In Wolinsky v. Scholastic Inc., 900 F.

Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman,

United States District Judge, identified five factors that are

relevant to an assessment of fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA]
> settlement is fair and reasonable, a court should
> consider the totality of circumstances, including but
> not limited to the following factors: (1) the
> plaintiff's range of possible recovery; (2) the extent
> to which the settlement will enable the parties to
> avoid anticipated burdens and expenses in establishing
> their claims and defenses; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether the
> settlement agreement is the product of arm's length
> bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satis-
fies these criteria.

First, plaintiffs' net settlement -- $73,333.33 after
attorneys' fees and costs -- represents approximately 40% of
their total alleged damages and is only $12,921.86 less than
Defendants' estimate of what plaintiffs could recover after trial
if they were to prevail on every claim. This percentage is
reasonable. See Redwood v. Cassway Contracting Corp., 16 Civ.
3502 (HBP), 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017)
(Pitman, M.J.) (net settlement of 29.1% of FLSA plaintiffs'
maximum recovery is reasonable); Chowdhury v. Brioni America,
Inc., 16 Civ. 344 (HBP), 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29,
2017) (Pitman, M.J.) (net settlement of 40% of FLSA plaintiffs'
maximum recovery is reasonable); Larrea v. FPC Coffees Realty
Co., 15 Civ. 1515 (RA), 2017 WL 1857246 at *2 (S.D.N.Y. May 5,

2017) (Abrams, D.J.) (net settlement of 43% of FLSA plaintiffs' maximum recovery is reasonable); Felix v. Breakroom Burgers & Tacos, 15 Civ. 3531 (PAE), 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). Moreover, I suggested the overall settlement amount of $110,000 to the parties during the May 10, 2017 settlement conference as the amount I felt was a just and fair settlement.

Second, the settlement will entirely avoid the expense and aggravation of litigation. The main factual dispute is whether or not the plaintiffs were tipped employees. Discovery on this issue would have led to protracted and costly litigation likely involving the depositions of all six plaintiffs and their direct supervisors. The settlement avoids the necessity of conducting these depositions.

Third, the settlement will enable plaintiffs to avoid the risk of litigation. If the action had not settled, plaintiffs would have had to have established not only what hours they worked and the amount they were paid by the Defendants, but also that they worked in excess of 20% of their workday performing non-tipped work in order to be entitled to full minimum wage pay. Defendants produced thousands of detailed time records that they contend rebuts this claim. Given the documentary evidence and

the fact that plaintiffs bear the burden of proof, it is uncertain whether, or how much, plaintiffs would recover at trial. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (SLT) 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom., Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, because I presided over the settlement conference that immediately preceded plaintiffs' acceptance of the settlement, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Both counsel represented their clients zealously at the settlement conference.

Fifth, there are no factors here that suggest the existence of fraud. The material terms of the settlement were

reached at the settlement conference. The total settlement amount was suggested by me as a fair and reasonable amount after a two-hour negotiation with the parties. This fact further negates the possibility of fraud or collusion.

The allocation of the net settlement between plaintiffs is also fair. According to the Agreement, each plaintiff will receive between 25% and 54% of his initial amount claimed (Agreement, Ex. A; Damages Chart). I find this bears a rational relationship to the amount claimed by each plaintiff.

The Agreement contains mutual general releases. The general release by plaintiffs provides that plaintiffs release Defendants "with respect solely and only to conduct that has arisen on, or prior to, the date of this Agreement . . . from all actions, causes of action, suits . . . claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered" (Agreement ¶ 5A). The general release carves out a specific exception for "claims for unemployment insurance and workers' compensation" and specifically does not bar plaintiffs from assisting in future litigation or investigations against Defendants (Agreement ¶ 5A). The general release by Defendants, although less detailed, in substance also releases plaintiffs "from all causes of action, suits . . . claims and demands of any kind whatsoever, at law or in

equity, direct or indirect, known or unknown, discovered or undiscovered" with respect "only to conduct that has arisen on, or prior, to the date this Agreement is executed" (Agreement ¶ 5B).

Generally, "courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" Martinez v. Gulluoglu LLC, 15 Civ. 2727 (PAE), 2016 WL 206474 at *2 (S.D.N.Y. Jan. 15, 2016) (Engelmayer, D.J.), quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (Kaplan, D.J.); accord Barbecho v. M.A. Angeliades, Inc., 11 Civ. 1717 (HBP), 2017 WL 1194680 at *2 (S.D.N.Y. Mar. 30, 2017) (Pitman, M.J.); Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at *3-*4 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.); Leon-Martinez v. Central Café & Deli, 15 Civ. 7942 (HBP), 2016 WL 7839187 at *1 (S.D.N.Y. Dec. 19, 2016) (Pitman, M.J.).

However, general releases may be permitted where the plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual. See Snead v. Interim HealthCare of Rochester, Inc., 16-CV-06550 (EAW), 2018 WL 1069201 at *6 (W.D.N.Y. Feb. 26, 2018); Geskina v. Admore Air Conditioning Corp., 16 Civ.

9

3096 (HBP), 2017 WL 1743842 at *2 (S.D.N.Y. May 3, 2017) (Pitman, M.J.); Cionca v. Interactive Realty, LLC, 15 Civ. 5123 (BCM), 2016 WL 3440554 at *3-*4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.); Souza v. 65 St. Marks Bistro, 15 Civ. 327 (JLC), 2015 WL 7271747 at *5 (S.D.N.Y. Nov. 6, 2015) (Cott, M.J.). General mutual releases in cases "with former employees who have no ongoing relationship with the employer, make[] sense in order to bring complete closure" in FLSA settlements. Souza v. 65 St. Marks Bistro, supra, 2015 WL 7271747 at *5. Broad general releases of non-FLSA claims can be acceptable where the release of claims is binding on both plaintiffs and defendants because the mutuality cures the "concern[] that the waiver unfairly benefits only Defendants." Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, supra, 2016 WL 922223 at *2. Courts have found that such releases are an effective way to ensure that "both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes." Souza v. 65 St. Marks Bistro, supra, 2015 WL 7271747 at *5.

Finally, the settlement agreement provides that 33.3% of the settlement fund will be paid to plaintiffs' counsel as

10

contingency fees. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. <u>Santos v. EL Tepeyac Butcher Shop Inc.</u>, 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), <u>citing</u> <u>Zhang v. Lin Kumo Japanese Rest. Inc.</u>, 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) <u>and</u> <u>Thornhill v. CVS Pharm., Inc.</u>, 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); <u>Rangel v. 639 Grand St. Meat & Produce Corp.</u>, No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); <u>accord</u> <u>Calle v. Elite Specialty Coatings Plus, Inc.</u>, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); <u>Palacio v. E*TRADE Fin. Corp.</u>, 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. Jun. 22, 2012) (Freeman, M.J.).

Accordingly, for all the foregoing reasons, I approve

the settlement in this matter.  In light of the settlement, the action is dismissed with prejudice and without costs.  The Clerk is respectfully requested to mark this matter closed.

Dated:     New York, New York
           April 3, 2018

                                    SO ORDERED

                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

All Counsel